STATE of Missouri, Respondent,

v.

Richard Allen EDWARDS, Appellant.

No. ED 91346.

Missouri Court of Appeals,
Eastern District,
Division One.

April 14, 2009.

M. Dwight Robbins, Fredericktown, MO, for Appellant.

Timothy W. Inman, Ste. Genevieve, MO, for Respondent.

KURT S. ODENWALD, Presiding Judge.

### Introduction

Richard Edwards (Defendant) appeals from the judgment entered by the Circuit Court of Madison County, following a jury trial, convicting him of one count of driving while intoxicated, in violation of Section 577.010, RSMo 2000.[1] We affirm.

### Background

On the evening of July 21, 2007, the Missouri State Highway Patrol established a sobriety checkpoint, commonly known as a "roadblock," on U.S. Highway 67 in Madison County. Trooper Richard Ayers (Ayers), with the Missouri State Highway Patrol, was working that checkpoint. While Ayers normally worked in Wayne County, he was working the checkpoint in Madison County as an overtime project.

Ayers testified at both Defendant's suppression hearing and trial regarding the procedure associated with checkpoints in general, and this particular checkpoint. Ayers testified that, to his knowledge,

---

**1.** All subsequent statutory citations are to RSMo 2000, unless otherwise indicated.

checkpoint sites are determined by the lieutenant and zone sergeant who aim for a location they deem safe and workable for the officers involved in the checkpoint. However, Ayers was uncertain of the exact procedure for choosing the particular site for the checkpoint on July 21, 2007. Ayers was aware that the location on Highway 67 was a place where it was not uncommon to find impaired drivers. The checkpoint on July 21, 2007, was set up with road signs on the shoulder of the road, both on the north and south side, rotating lights in the middle of the highway, and a large light on a van to illuminate the area for safety and visibility. There was also a patrol car in each lane with its light bars flashing. Ayers testified that this particular area on Highway 67 is flat and has good sight visibility, thus is safer for both the officers and the drivers. The checkpoint was set up to last two to three hours in Madison County and then the same amount of time in Wayne County.

At the checkpoint on July 21, 2007, a lieutenant was on site to oversee the operations. Ayers testified that the procedure used for this particular checkpoint was to stop every car that approached to make contact with the driver, unless the lieutenant deemed it unsafe. When a driver was stopped at the checkpoint, the officers first asked for the driver's license and proof of insurance. While the officer was evaluating that information, the officer would talk to the driver to evaluate if there were any indicators that the person could be impaired. Ayers estimated that, on average, each driver was stopped for two to four minutes. When the officer felt a stopped driver may be impaired, a second officer was called to assist and the vehicle was

removed from the roadway. At that point, the officers further investigated by performing field sobriety tests and talking to the driver.

Around 11:30 p.m. on the evening of July 21, 2007, Defendant was stopped as part of the normal procedure of the checkpoint. Ayers approached Defendant's vehicle and requested Defendant's driver's license and proof of insurance. Ayers testified that he "smelled a moderate odor of alcoholic beverage emitting from the vehicle and [Defendant]." Ayers also noted Defendant had slurred speech, and watery and bloodshot eyes. Another officer was then summoned to assist and Defendant's car was moved to the side of the roadway. Ayers testified that Defendant was uncertain in his steps and swayed as he was escorted across the street for further investigation. Ayers and the other officer then conducted the Horizontal Gaze Nystagmus (HGN)[2] test on Defendant. Because Defendant showed four out of six indicators on the HGN test, the officers requested additional field sobriety testing from Defendant. Defendant refused all other field sobriety testing. At that time, Defendant was placed under arrest and read his *Miranda*[3] warnings and the Missouri implied consent law. Ayers interviewed Defendant for the Alcohol Influence Report at which time Defendant's speech remained slurred and the odor of alcohol continued. During the interview, Defendant responded, "I don't want to answer that," when he was asked if he had been drinking. When asked if he was under the influence of alcoholic beverages, Defendant responded, "I'm not saying anything else." At the completion of the in-

**2.** The HGN is a test where a trained officer looks at a suspect's eyes to look for involuntary jerking and nystagmus of the eyes, indicating a possibility of the presence of alcohol in the system.

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

terview, after it was determined that Defendant's passenger was unable to drive as well, Ayers drove Defendant to his home, releasing him on a summons.

Thereafter, the State of Missouri (State) charged Defendant by Information with one count of driving while intoxicated, in violation of Section 577.010.

Prior to trial Defendant filed two Motions to Suppress with the trial court, the first on April 21, 2008, seeking to suppress evidence from the roadblock, and the second on April 23, 2008, seeking to suppress the field sobriety tests. The trial court heard the motions together on April 24, 2008. At the suppression hearing, Ayers testified to the conditions and procedures surrounding the checkpoint and Defendant's arrest. After the testimony, the trial court denied the Motions to Suppress.

Defendant's trial took place on April 25, 2008. The State presented testimony from Ayers. The Defendant chose not to present evidence. Defendant filed motions for judgment of acquittal at the close of the State's evidence and the close of all evidence, both of which the trial court denied. After the jury instructions were read, and during deliberations, the trial court received a note from the jurors asking, "What is a DUI. What is a DWI. Are they both the same. Is it illega[l] to have a drink and th[e]n drive." After discussing the questions with the parties, the trial court responded, "You must be guided by your recollection of the evidence and the instructions you have been given. No further instruction may be given." The jury

then returned a verdict of guilty of driving while intoxicated. On May 5, 2008, Defendant filed both a Motion for Judgment of Acquittal and Motion for New Trial.

On March 26, 2006, the trial court entered a Finding of Prior Intoxication Related Offender, finding Defendant previously pled guilty to driving while intoxicated, and sentenced Defendant to five days in jail and two years of unsupervised probation.

On May 21, 2008, Defendant filed a timely Notice of Appeal to this Court. This appeal follows.

## Points on Appeal

Defendant presents three points on appeal. In his first point, Defendant alleges the trial court erred in failing to suppress evidence obtained at the checkpoint because the roadblock was not conducted in accordance with the accepted guidelines.

Second, Defendant asserts the trial court erred in denying his Motion For Judgment of Acquittal at the Close of the State's Evidence [4] because the State failed to present any evidence that Defendant was driving while impaired due to the consumption of alcohol.

Third, Defendant claims the trial court erred in denying his Motion for New Trial and his Motion for Judgment of Acquittal [5] because the jury did not follow the verdict director.

---

4. While Defendant claims in his brief that the trial court erred in denying his "Motion to Dismiss at the close of the State's evidence," Defendant did not file any such "Motion to Dismiss." Instead, Defendant filed a "Motion for Judgment of Acquittal at the Close of the State's Evidence." Thus, we will refer to the motion by the title under which it was properly filed.

5. Again, while Defendant claims in his brief that the trial court erred in failing to sustain his "Motion for Acquittal," Defendant did not file any such motion. Instead, Defendant filed a "Motion for Judgment of Acquittal," thus we refer to that motion by its proper name here.

*Discussion*

*Point I—Motion to Suppress*

█ In his first point on appeal, Defendant alleges the trial court should have suppressed evidence obtained at the checkpoint because the checkpoint was not conducted in accordance with the guidelines set forth in *State v. Welch,* 755 S.W.2d 624 (Mo.App. W.D.1988).

█ Typically on appeal, a trial court's ruling on a motion to suppress will be reversed only if it is "clearly erroneous." *State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007). However, when attacking "the validity of the admission of evidence to which a motion to suppress evidence was directed, the question to which the motion was directed must be kept alive by asserting a timely objection to its admission at trial and by raising the matter in a motion for new trial." *State v. McDaniel,* 236 S.W.3d 127, 130 (Mo.App. S.D.2007); *State v. Huchting,* 927 S.W.2d 411, 415 (Mo.App. E.D.1996) ("The rule is well established in Missouri that when a motion to suppress evidence is denied and the evidence is subsequently offered at trial, defendant must object at trial to the admission of the evidence."). Because a ruling on a motion to suppress is interlocutory, and thus subject to change during the trial, a specific objection must be made when the evidence is offered at trial in order to preserve the issue for appellate review. *State v. Evenson,* 35 S.W.3d 486, 491 (Mo.App. S.D.2000). A failure to object to the admission of evidence at the earliest opportunity constitutes a waiver of the claim. *Id.*

Here, Defendant objected to the admission of the evidence obtained at the checkpoint in his pretrial Motion to Suppress. The trial court overruled the Motion to Suppress after the suppression hearing. At trial, however, Defendant failed to object to the testimony concerning the evidence he sought to exclude. Ayers testified about the evidence obtained at the checkpoint. Defendant offered no objection to Ayers's testimony. Defendant's failure to properly object at trial to the admission of evidence of which he now complains leaves us nothing to review regarding that evidence. *State v. Rayford,* 611 S.W.2d 377, 378 (Mo.App. E.D.1981).

█ Unpreserved issues may only be reviewed for plain error. Rule 30.20; *State v. Johnson,* 207 S.W.3d 24, 34 (Mo. banc 2006). Plain error is found only where the alleged error establishes substantial grounds for believing "that manifest injustice or miscarriage of justice has resulted from the trial court error." *Id.* at 44. However, "plain error review should be used sparingly and does not warrant review of every single trial error unpreserved for review." *State v. Ringo,* 30 S.W.3d 811, 821 (Mo. banc 2000). An appellate court has complete discretion on whether to review an unpreserved matter for possible plain error. *State v. Marshall,* 131 S.W.3d 375, 377 (Mo.App. E.D. 2004). In this instance, Defendant has not requested that we review his point on appeal under "plain error" review, and we decline to do so *sua sponte. See id.*

Defendant's first point on appeal is denied.

*Point II—Motion for Judgment of Acquittal*

In his second point on appeal, Defendant alleges the trial court erred in denying his Motion for Judgment of Acquittal at the Close of the State's Evidence. Defendant claims the State failed to present any evidence that Defendant was driving while impaired due to the consumption of alcohol because the only evidence presented was a "moderate" odor of alcohol and a HGN test.

### Standard of Review

"We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense." *State v. Burse*, 231 S.W.3d 247, 251 (Mo.App. E.D.2007). "When reviewing the sufficiency of the evidence, we review all evidence and inferences reasonably draw[n] from the evidence in the light most favorable to the verdict and disregard all contrary evidence and inferences." *Id.* (internal citations and quotations omitted). "The trier of fact determines the credibility of the witnesses, and may believe all, some or none of the testimony of a witness." *Id.* "The function of the reviewing court is not to reweigh the evidence, but only to determine if the evidence is supported by sufficient evidence." *Id.*

### Analysis

▮ Defendant was convicted of "driving while intoxicated" in violation of Section 577.010.1. This section states that "[a] person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition." Section 577.010.1. Accordingly, to support Defendant's conviction, the State must prove beyond a reasonable doubt that Defendant was (1) operating a motor vehicle, (2) while intoxicated. *Id.*

Defendant does not contest that he was operating a motor vehicle prior to coming upon the checkpoint. Furthermore, Ayers testified that upon approaching Defendant's vehicle, he identified Defendant as the driver and requested Defendant's driver's license and proof of insurance. Thus the only issue is whether the State proved Defendant was "intoxicated" under Section 577.010.1.

▮ "[A] person is in an 'intoxicated condition' when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." Section 577.001.3. "Under the influence of alcohol" has been defined as "any intoxication that in any manner impairs the ability of a person to operate an automobile." *State v. Hoy*, 219 S.W.3d 796, 801 (Mo.App. S.D.2007). "Intoxication" is a physical condition "usually evidenced by unsteadiness on the feet, slurring of speech, lack of body coordination and an impairment of motor reflexes." *State v. Hall*, 201 S.W.3d 599, 603 (Mo.App. S.D. 2006). Intoxication may be proven by any witness who had a reasonable opportunity to observe Defendant's physical condition. *Id.* Furthermore, the State is not required to admit evidence of the results of a chemical test to prove a defendant's intoxication. *Id.* It is the fact, not the degree, of intoxication that is the significant issue to consider. *City of Trenton v. Lawrence*, 548 S.W.2d 278, 279 (Mo.App.1977).

In this case, Ayers testified that he smelled a "moderate odor" of alcohol on Defendant, Defendant's speech was slurred, and his eyes were bloodshot and watery. These are all known indicia of intoxication. *State v. England*, 92 S.W.3d 335, 342 (Mo.App. W.D.2002). Defendant also failed four of the six indicators on the HGN test. While Defendant questions the applicability of the HGN test, the appellate court in *State v. Hill*, after noting that the State established the HGN test has achieved general acceptance in the behavioral science community, found that "when properly administered by adequately trained personnel, the HGN test is admissible as evidence of intoxication." 865 S.W.2d 702, 704 (Mo.App. W.D.1993). Defendant also refused further field sobriety tests, including the breath test, and then refused to answer several interview questions regarding alcohol consumption and

intoxication. This refusal has been found as a further indication of intoxication. *See State v. Myers,* 940 S.W.2d 64, 65 (Mo.App. S.D.1997). Furthermore, Ayers testified that in his opinion, he believed Defendant was impaired. This testimony is also sufficient evidence of intoxication to support Defendant's conviction. *Id.* This evidence, when viewed in its totality and in the light most favorable to the verdict, is sufficient from which a reasonable juror could have found Defendant guilty of driving while intoxicated.

We find the Court's analysis in *Myers* instructive. In *Myers,* the appellate court found the evidence was sufficient to support the defendant's conviction for driving while intoxicated when the defendant failed the HGN test, had bloodshot and watery eyes, had a "moderate smell of alcohol coming from her breath," refused to perform additional field sobriety tests or to submit to a breathalyzer test, and the arresting officer testified that it was his opinion the defendant was intoxicated. *Id.* at 65. That fact situation in *Myers* is strikingly similar to the one here, and we likewise find the evidence sufficient to support Defendant's conviction of driving while intoxicated.

Defendant's second point on appeal is denied.

*Point III—Motion for New Trial and Motion for Judgment of Acquittal*

 In his third point on appeal, Defendant claims the trial court erred in denying his Motion for New Trial and his Motion for Judgment of Acquittal. Defendant asserts the jury did not follow the verdict director and suggests that the jury applied a different and higher standard than required. Defendant presents no legal argument in support of this point in his brief. Instead Defendant limits his "argument" to a conclusory statement that "it is obvious that the jury was applying a much

higher standard than that required by Missouri law" and his personal opinions regarding the "hysteria created by certain lobbying groups."

 "An appellant must develop the contention raised in the point relied on in the argument section of the brief." *Horwitz v. Horwitz,* 16 S.W.3d 599, 605 (Mo.App. E.D.2000); *see also* Rule 30.20 ("Allegations of error that are not briefed or are not properly briefed on appeal shall not be considered by the appellate court except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence."). "Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Blakey v. AAA Prof'l Pest Control, Inc.,* 219 S.W.3d 792, 794 (Mo.App. E.D.2007). "A point is considered abandoned if a party fails to support a contention with relevant authority or argument beyond conclusions." *Id.* (internal quotations omitted); *see also State v. Oswald,* 14 S.W.3d 678, 680 (Mo.App. W.D.2000) (finding the defendant's point was not developed in the argument portion of his brief, thus was abandoned and not preserved for appellate review).

Here, Defendant fails to adequately brief his third point on appeal. His argument section simply recites the relevant facts, makes a one-sentence conclusory statement, and then briefly argues policy. Glaringly absent from Defendant's argument is any supporting legal authority. We find that Defendant has abandoned this argument, and we decline to review this point on appeal.

Defendant's third point on appeal is denied.

*Conclusion*

The judgment of the trial court is affirmed.

GLENN A. NORTON and PATRICIA L. COHEN, JJ., concur.